# Susan V. Dock *v.* Schlichter Jute Cordage Co., Appellant.

*Corporations—Purchase of its own stock by corporation.*

A corporation has the right to purchase its own stock where the transaction is not prohibited by statute, and is made in good faith.

*Corporations—Stock dividend.*

A resolution of the board of directors of a corporation distributing among the shareholders shares of stock of the company which had been purchased by the company out of its earnings, cannot be subsequently rescinded, where it is not shown that such distribution would be injurious to the business of the company.

Argued March 25, 1895. Appeal, No. 69, Jan. T., 1895, by defendant, from decree of C. P. No. 1, Phila. Co., Sept. T., 1893, No. 392, on bill in equity in favor of plaintiff. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction and to compel transfer of stock.

The case was referred to E. HUNN HANSON, Esq., as examiner and master, who reported as follows :

" In substance the allegations of the bill are :

" That the defendant company was duly incorporated for the purpose of manufacturing and trading, and from that to the time of filing the bill has conducted its business in Philadelphia; that at the date of incorporation its capital stock consisted of 5000 shares of a par value of $100 each. On March 4, 1889, the corporation claimed from the complainant $22,941.67, in payment of which it received from her 277 shares of its capital stock at a valuation of $25,622, leaving a balance due her.

" That on July 16, 1890, the directors of the company defendant declared a dividend in stock to its shareholders of 277 shares (a copy of the resolution to that end was made an exhibit), and it was alleged that by reason of the transfer of 277 shares just mentioned (which in the bill is described as a purchase), the number of outstanding shares when the said dividend was declared was 4723, of which 4723 shares, the claimant at the time the dividend aforesaid was declared was the owner of 1500, and that she was entitled to receive pursuant to its declaration of dividend eighty-nine shares as her proportion. That the said dividend was payable on demand, and that the complainant has frequently demanded a certificate for the said eighty-nine shares, which the defendant has unjustly refused to issue. The claimant further alleged that since the date of the stock dividend the company defendant has declared cash dividends, and her proportion of these the defendant has also unjustly refused to pay.

" The prayer is:

" 1. For an injunction to restrain the defendant from paying the dividend due to the complainant to any other one.

" 2. For a decree requiring the defendant to issue to the complainant its certificate for the said eighty-nine shares.

" 3. For a decree requiring the defendant to pay to the complainant the dividends declared upon the eighty-nine shares of stock since 16th July, 1890.

" 4. General relief.

" The answer in substance avers:

" That the defendant is a corporation as alleged, conducting its business in Philadelphia. That the complainant transferred to the defendant 277 shares as alleged, but that no balance is due her and that all money due her has long since been paid.

" That the declaration of the stock dividend was made, but

that the resolution to that end involved a statement which was untrue in that the 277 shares did not represent undivided profits and that such resolution was otherwise illegal and void.

" That on July 16, 1890, the complainant owned 1500 shares of stock, but when the bill was filed she owned none. That the defendant is advised that the board of directors had no power to distribute the 277 shares as a dividend of profits, that it did not claim to do so irrevocably, that the dividend was not payable on demand, and that later it revoked and declared void the order of distribution, and that the complainant is not entitled to demand or recover the eighty-nine shares.

" The defendant further avers that the transaction relating to the declaration of the dividend was as follows : Some time in June and July, 1890, a sale of the property plant and good will of the corporation was negotiated by its officers and determined upon. Pursuant to its terms the shareholders were to transfer their shares to the purchaser, and in order that the entire 5000 shares might pass, the resolution of July 16, 1890, was adopted. The resolution was passed for no other purpose and its operation depended upon a consummation of the sale. The negotiations to this end failed and on March 16, 1891, the board of directors passed the resolution rescinding and making void that of July 16, 1890, so that the 277 shares remained unissued in the treasury.

" That on or about January 16, 1893, the complainant sold, bargained, and assigned her 1500 shares, and on or about April 4, 1893, she assigned and surrendered to her son, Herman Dock, all her interest in and to the proportion of the 277 shares now claimed by her. That Herman Dock was a member of the board and present at its meeting July 16, 1890, and March 16, 1891, and was a party to the resolutions of those dates.

" That no dividends have been appropriated to the 277 shares which have not been transferred on the books of the company and have remained in its treasury, and that the profits of the company have been divided independently of them.

" To the truth of the answer is the affidavit of the president of the company.

" The facts apparent from the testimony are the following. They are all of those material and legally relevant:

" 1. The defendant, pursuant to the act of assembly, ap-

proved April 29, 1874, was created a corporation of the second class under the said act, January 15, 1884, for the purpose of manufacturing, buying and selling of jute, flax, manilla and sisal hemp and other goods pertaining to these fibers.

" Its capital stock at the time of incorporation consisted of 5000 shares of the par value of $100 each.

" Susan V. Dock having become indebted to it for moneys loaned her in the sum of $22,941.67, and being the owner of 277 of its shares, she transferred on March 4, 1889, these shares to the company, which accepted them in payment of the said indebtedness.

" 2. The company defendant by its board of directors on July 16, 1890, passed a resolution in the following words :

" ' Whereas, there is now in the treasury of the company 277 shares of its capital stock, representing undivided profits invested in said security.

" ' And whereas, it is deemed advisable to divide said stock as a dividend among the stockholders ; therefore be it

" ' Resolved, that the following distribution of said 277 shares of stock as a dividend be made :

" ' Isaac Schlichter, . . . . . 166 shares.
    Susan V. Dock, . . . . 89 "
    Herman Dock, . . . . . 17 "
    I. C. Vincent, . . . . . 2 "
    Edmund Dawes, . . . . . 3 " '

" 3. In June and July of 1890, on behalf of the owners of the capital stock, some of the officers of the company sought to bring about a sale of its entire property, plant and stock, and to that end on July 17, 1890, a paper writing was signed by all of the shareholders (excepting Edmund Dawes) by which Joseph E. Hillam was made their agent to sell for the sum of $700,000 (to be paid as is therein set forth). He was, however, restricted from selling the shares of any one unless those of all were sold at the same time. The power of sale thus conferred was to last for six months and upon the expiration of that time the powers were to end.

" The sale thus intended was not effected and on April 16, 1891, a somewhat similar paper reciting that all of the stockholders (naming them) were parties to it, but signed as follows :

"'THE SCHLICHTER JUTE CORDAGE CO.
"'Isaac Schlichter.
"'*Pres.*'

set forth that Leedom Binns was made their attorney to sell the property, plant and stock of the company for $625,000 (to be paid in the manner therein described); it also provided that the attorney was not to sell the shares of any one unless the whole of the stock was sold at one and the same time, and the authority was to endure for three months from its date.

"In both paper writings the names of the shareholders and the number of shares held by each was set forth, as follows:

| | | |
|---|---|---|
| "'Isaac Schlichter, | 2972 | shares. |
| Susan V. Dock, | 1589 | " |
| Herman Dock, | 317 | " |
| Isaac C. Vincent, | 52 | " |
| Edmund Dawes, | 58 | " |
| William H. Heisler, | 10 | " |
| Thomas C. Barr, | 2 | " |
| | 5,000 | " ' |

"The intending purchasers or the English banker acting for them required certain examinations into the business of the company to be made at his expense, if the statement made to him as to profits, etc., were found to be correct, and at the expense of Mr. Schlichter, if found to be otherwise, the estimated cost of which examination was required to be deposited by Mr Schlichter. This was not done, and no effort thereafter was made to sell.

"4. The company defendant by its board of directors on March 16, 1891, passed a resolution in the following words:

"'Philadelphia, March 16, 1891. Meeting of board of directors. Present, Isaac Schlichter, president, in the chair, William H. Heisler and Herman Dock. On motion of William H. Heisler, duly seconded, the action of the board at the special meeting held July 16, 1890, was rescinded and declared void.'

5. Between July, 1890, and March, 1891, none of the 277 shares were transferred to any of the shareholders and no dividends were declared upon them since March 4, 1889.

"One of the purposes of the resolution of July 16, 1890, was

so to distribute the 277 shares to shareholders that they, the owners of 4723 shares, would then be entitled to transfer the entire 5000 shares into which the capital stock was divided, should a purchaser be found for the plant and shares.

"The president of the company testified that the 277 shares were considered treasury stock.

"The secretary of the company testified that they were part of the assets of the company, and not treasury stock, and that they had been bought by the company (as he understood) out of its surplus fund.

"In January, 1893, Susan V. Dock sold and transferred to Isaac Schlichter her 1500 shares of stock, and on April 3, 1893, she transferred her interest in the eighty-seven shares, her alleged stock dividend, to Herman Dock, who, on September 1, 1893, retransferred them to Susan V. Dock.

"On September 20, 1893, Susan V. Dock made a demand upon the defendant company for a certificate for eighty-seven shares of stock, mentioned in the resolution of July 16, 1890. It was by the company refused.

"On behalf of the complainant, the master has been requested further to report that Isaac Schlichter's testimony—to the effect that he had no recollection of directing Schroeder to sign, and, in fact, did not direct him to sign the name of Edmund Dawes to the paper, constituting Jos. G. Hillam attorney of all the stockholders, to effect a sale, as before stated—was distinctly and directly contradicted by the testimony of Herman Dock, who cautioned Isaac Schlichter against causing the name of Dawes to be so written, which was corroborated by the testimony of Dawes, that he did not sign the paper, neither knew of the intended sale.

"In accordance therewith, it is reported that the testimony was as has been requested."

· CONCLUSIONS FROM THE PLEADING AND EVIDENCE:

"Whether or not the complainant is entitled to the decree prayed depends upon the legal solution of two matters:

"First: Were the 277 shares, which became the subject of the resolution of July 16, 1890, obtained by the company through the loan or purchasing power of its profits, or were they otherwise obtained?

"Second: Was it or was it not in the power of the board of directors to annul the resolution of July 16, 1890, by that of March 16, 1891?

"1. In resolving these questions the master has had the aid of the research of opposing counsel and of the closely reasoned argument of each in support of his position.

"The bill is rested upon the right alleged to have been conferred by the resolution of July 16, 1890; it invited from the defendant its answer in this behalf; the answer avers that these shares did not represent undivided profits, that the directors had no power to declare a stock dividend, and that they only intended to distribute the stock if the contemplated sale of all of it should be effected; that such sale was not made, and that accordingly the directors, by resolution of March 16, 1891, rescinded that declaring the stock dividend.

"The matter averred relates to and, indeed, is a part of that alleged in the bill; it was the right and the duty as well of the defendant to set it up; and hence, on this ground, as well as with respect to the test of what would have formed ground for exception, the answer is responsive, Eaton's Appeal, 66 Pa. 483, and Burke's Appeal, 99 Pa. 350, and therefore its statements prevail, unless overcome by the testimony of two witnesses, or one with corroborating circumstances the equivalent of another; or unless the testimony of the defendant impeaches or otherwise qualifies its answer: Koons v. Bute, 2 Phila. Rep. 170; Spencer's Appeal, 80 Pa. 317, 331.

"The affidavit to the answer of the defendant company is that of its president, and its allegations are those made presumably from his knowledge. He was examined on behalf of the defendant, and testified in substance that the resolution of July 16, 1890, was passed, and the 277 shares allotted to the shareholders, in order that they might transfer the entire 5000 shares if Hillam found a purchaser, and this course had been advised by the secretary of the company. The witness was asked to state the circumstances connected with the resolution, and in addition to the testimony just referred to, he set forth the way in which the company had acquired the 277 shares, but nowhere did he aver, as the answer had done, that they did not represent undivided profits. On the contrary, it might not unfairly be inferred, from his testimony, that the company had

made, from time to time, loans of its moneys, the result of its
business, to Susan V. Dock; and it was to discharge the indebt-
edness which thus arose that she transferred to the company
the 277 shares.   That the moneys for such loans were procured
from its business, and were from its earnings, seems manifest
from the testimony of Thomas C. Barr, the secretary of the
company, and a member of the Philadelphia bar, also called on
behalf of the defendant.   He distinctly stated that the shares
in question were 'part of assets of the company' and not
'treasury stock;' that he understood they had been bought
from the surplus fund of the company, and that he considered
himself entitled as a shareholder to his proportion of these
shares.   It is therefore concluded, from the testimony of both
the secretary and of the president of the defendant company,
that its answer in respect to the assertion that the 277 shares
did not represent undivided profits is so qualified that it loses
its potency as a responsive pleading, and the resolution of
July 16, 1890, averring that the shares represent undivided
profits, stands uncontradicted; and it is concluded the com-
pany obtained these shares in discharge of a debt to it, which
arose from its loan of earnings to Susan V. Dock.   It was urged
that the loan of money in this way was ultra vires; this was
not shown.   The charter did not prohibit it; and, as a business
corporation, the power of loaning, though less frequently exer-
cised, may be as needful in the prosecution of its undertaking
as that of borrowing.   A corporation has the right to acquire
stock of its own, where the transaction is not prohibited by
statute, is bona fide et sine malo ingenio: State Bank v. Fox,
3 Blat. C. C. Rep. 431 ; Bank v. Bruce, 17 N. Y. (Ct. of App.)
507; Coleman v. Oil Co., 51 Pa. 74, and Clapp v. Peterson,
104 Ill. Rep. 26.   No statute prohibitory of such dealing is
known in Pennsylvania, and no right of creditors or of others
than the shareholders has appeared in this case, and as to the
latter nothing contrary to good faith.

  " It was argued that the purpose and sole purpose of the res-
olution was that given by the president.   That this was a pur-
pose is admitted, but it was not inconsistent with the further
purpose indicated in the preamble to the resolution.   Doubtless
the intention that the shareholders should transfer all the shares
in the event of a sale was the occasion of the resolution, but it

was not necessarily its cause; this, judging from the resolution, was that which generally prompts the declaration of a dividend.

"2. Was or was it not in the power of the board of directors, by the resolution of March 16, 1891, to rescind that of July 16, 1890, is the next question for decision.

"It is to be observed that a dividend of stock is ordinarily made from an increase of the capital authorized by the legislature or by the charter of the company. That the declaration of such is not within the powers of a board of directors and to be legally effected must be by the direct action or subsequent sanction of the shareholders themselves. And in dividends of stock required in this manner, if ill advisedly made by the directors or properly by the shareholders, it is in the power of either to revoke their action if certificates have not actually issued as required by statute: Terry v. Eagle Lock Co., 47 Conn. Rep. 141–164.

"In the case under consideration the dividend was of an entirely different kind; it was of earnings which had the form of stock of the company, just as it might have by investment taken the form of government securities or of real property; and is to be dealt with accordingly.

"It was argued for the plaintiff that her right was a vested one, and that after it became so the power of the board over it was at an end; and for the defendant that the loan of money to Susan V. Dock was invalid and no necessity had been shown which would justify the company's acceptance of stock in discharge of her debt to it, and therefore that it was the duty of the board to undo by its last resolution the irregularity it had committed by its first.

"There are cases readily imaginable where, after a declaration of a dividend, a shareholder would acquire a vested right within the meaning of the plaintiff's contention, as for example those in which with respect to the shareholder, the company has made an express appropriation of so much of its earnings or so many of its shares, and thus separated them from the general property of the company in such manner that they may be said to be clothed with a trust obligation. To illustrate, there would be such a right if the company deposited the moneys to pay the dividends with a banker and drew its check to the order of each entitled on the fund so deposited, or, in

the case of a stock dividend if the company executed its power of attorney to transfer and these awaited delivery. But no such or similar step was taken in this case and it is concluded the plaintiff did not have the vested right claimed. It is believed that when there has been no such appropriation as that above mentioned, a company by its board of directors in a proper case and for cause may rescind a resolution declaring a dividend; as where owing to destruction of plant by fire immediately following such resolution. If in the business and honest judgment of the board the earnings intended to be distributed should be recalled and used for the restoration of the destroyed property, it would be within its power to so deal with them. But unless some similar thing appear the declaration of a dividend of earnings is the announcement of an obligation due each shareholder for which proceedings may be had as legal methods indicate, and the burden of manifesting that the debt or obligation is not due after such a declaration is upon the company : Le Roy v. Globe Ins. Co., 2 Edw. (Ch.) 657–671.

"In the present matter the resolution of July 16, 1890, was the declaration of an obligation, and no evidence other than the resolution of March 16, 1891, has been produced in this behalf. But no ground there appears in justification of its purpose ; it announced no reason whatever and not any has appeared. The alleged invalidity of the loans to Susan V. Dock is a matter of evidence ; they may or may not have been illegal,—in the absence of proof they will not be presumed to have been so. It is true no necessity was shown for receiving the 277 shares in discharge of the indebtedness due the company, but as it is in the usual course of affairs to accept the best form of property possible in payment of a debt, a fair presumption exists that these shares were of this character, and if they were no other necessity is requisite. It would have been eminently fitting for the board to undo by a later resolution an earlier one of irregularity, and the failure of the company to declare any dividend upon the 277 shares is some indication that it was inactive and treasury stock. But this is thought to be overcome by the testimony of the secretary of the company before referred to ; and apart from this indication there is recalled nothing that manifested an irregularity.

" On March 16, 1891, the directors adopted the rescinding resolution. From this date to that of April 3, 1893, when Susan V. Dock assigned her shares to her son no demand was made for a certificate for the eighty-nine shares, the subject of her bill. The delay was a long one, and in a court of equity such a delay unexplained generally deters its action. Some excuse may have existed, inasmuch as the defendant made no objection upon this head. The master deems it expedient to do no more than to refer to it; and in like manner no more is done than to allude to the question of jurisdiction, since that was neither raised nor argued. For it may be that the eighty-nine shares are known by each party to be of an uncertain or contingent value, admitting of no just compensation in money; and that the parties deem the resolution of July 16, 1890, so wanting in definiteness as to time that its obligation could not be enforced at law.

" From the consideration heretofore given the question, it is finally concluded that the second prayer of the bill should be granted, and that, although no purpose in the defendant has appeared to transfer to any other than the plaintiff, the denial of her right seems to warrant its possibility and justifies the grant of the first prayer of the bill. With respect to the third prayer no evidence has been offered, and it is refused. There has been nothing to authorize a departure from the general rule awarding costs in favor of that party who has secured a substantial decree, and accordingly it is recommended that the defendant pay the taxable costs of the case. A decree embodying the conclusions of the master is drafted and herewith submitted to the court."

Exceptions to the master's report were dismissed and the following decree entered:

" Now          1894, the report of the master having been read and the counsel for the plaintiff and defendant having been duly heard upon it and the exceptions thereto:

" It is adjudged and decreed that The Schlichter Jute Cordage Company, by its officers, be enjoined and restrained from issuing a certificate to any other person than to Susan V. Dock for the eighty-nine shares of its capital stock mentioned in the resolution of its board of directors of July 16, 1890.

" That The Schlichter Jute Cordage Company forthwith is-

sue a certificate under its corporate seal, signed by its president, Isaac Schlichter, and witnessed by its secretary, for eighty-nine shares of its capital stock to Susan V. Dock in the form hitherto used by said company.

" And, finally, that The Schlichter Jute Cordage Company pay into court the costs of the cause after they shall have been duly taxed."

*Error assigned*, among others, was above decree, quoting it.

*Alfred D. Wiler* and *Wm. W. Wiltbank*, for appellant.—The directors had a right under the special circumstances of this case to revoke the resolution providing for the stock dividend : In re LeBlanc, 14 Hun, 8 ; LeRoy v. Globe Ins. Co., 2 Edward Chanc. 657 ; King v. Ry., 29 N. J. Law Rep. 85 ; Coleman v. Oil Co., 51 Pa. 74.

*F. Carroll Brewster*, for appellee.—The company had the right to purchase its own stock : Dupee v. Power Co., 114 Mass. 43 ; Williams v. Mfg. Co., 3 Maryland Ch. Dec. 419 ; C. P. & S. W. R. R. v. Marseilles, 84 Ill. 645 ; Robinson v. Beall, 26 Ga. 17 ; Morgan v. Lewis, 46 Ohio, 1 ; Taylor on Corporations, sec. 137.

The directors had no authority to rescind the dividend without the consent of the stockholders : King v. R. R. Co., 29 N. J. Law Rep. 82 ; 1 Morgan on Corporations, sec. 445 ; 1 Spelling on Corporations, sec. 446.

A master's finding upon a question of fact is entitled to the same consideration as the verdict of a jury, and will not be set aside, unless it be clearly and palpably against the weight of the evidence : Bedell's Appeal, 87 Pa. 510 ; Lewis's Appeal, 127 Pa. 127 ; Martinsburg Bank v. Supply Co., 150 Pa. 36 ; McConomy v. Reed, 152 Pa. 42 ; Warner v. Hare, 154 Pa. 548 ; Potter's Appeal, 158 Pa. 292 ; Brotherton v. Reynolds, 164 Pa. 134.

PER CURIAM, April 8, 1895 :

The controlling questions in this case have been fully considered and so satisfactorily disposed of by the learned master that we find it unnecessary to specially notice either of the assignments of error. There is nothing in any of them that

requires a reversal or modification of the decree. It is affirmed on the clear, concise and convincing report of the master.

Decree affirmed and appeal dismissed with costs to be paid by the appellant.