Estate of Lydia E. Shelton, Deceased.

Argued November 20, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*William C. Alexander,* for appellant.—An implied promise to pay for services arose and the burden is on the estate to show no debt was intended: Gibb's Estate, 266 Pa. 485; Kerr v. Wilson, 284 Pa. 541; Beaver's Estate, 74 Pa. Superior Ct. 354.

*Ellwood J. Turner,* for appellees.—The claim is not sustained by the testimony in this case: Collins' Estate, 83 Pa. Superior Ct. 31; Est. Mahlon Miller, 136 Pa. 249; Hirst's Estate, 274 Pa. 286; Applegren's Est., 59 Pa. Superior Ct. 289.

OPINION BY TREXLER, J., March 1, 1929:

In February, 1926, Mrs. Shelton went to live with the claimant, Mrs. Kuenstener, and, excepting a visit of ten days to Atlantic City, stayed with her until December 22, 1926, when she went to a hospital where she died a few days thereafter. Mrs. Kuenstener now claims compensation for having furnished board, lodging and nursing to the deceased during the above period. The judge disallowed the claim, assigning two reasons for the conclusion.

First: There was not sufficient proof to support the claim. Witnesses were called who testified that Mrs. Shelton lived with the claimant, that she was confined to her bed about two or three days about every ten days or two weeks and that she required care and Mrs. Kuenstener waited on her. She told a former husband from whom she had been divorced, that she would pay Mrs. Kuenstener for her keep. Another witness testified that "she (the decedent)

always told me, previous to their leaving there that anything she had would go to Mrs. Kuenstener positively. She said she is the only one that has ever done anything for me." A witness who lived with the Kuenstener's during the period covered by this claim, testified that he advanced money to Mrs. Kuenstener to run the house and that the decedent told him that the money would be repaid to him after they had moved to another place as "we are going to fix the house all up." When she sold her Liberty Bonds she would "repay Mrs. Kuenstener and then Mrs. Kuenstener would repay me." This is all the testimony in regard to declarations of the decedent. The above statements were not consistent. The one to the effect that the claimant was the only one who ever did anything for her and intended to give her all she had, is not an acknowledgment of any indebtedness. The testimony of the former husband of the decedent is more definite. What time this statement was made does not appear and whether she paid or not, we cannot tell. The declaration that she was going to pay for her keep when she was able followed by the drawing of money out of the bank without any proof as to where that money was expended, rather negatives the conclusion that the claim remained unpaid. The testimony of the young man bears out the view hereinafter expressed that Mrs. Shelton was regarded as a member of the family. The court decided that there was not sufficient to overcome the presumption of payment.

The appellant asserts that without any of this testimony as to what decedent had said, the services being proved, no relationship being shown, the right to compensation follows, citing, Gibb's Estate, 266 Pa. 485. We can see a difference between that case and the present. There seems to have been, as above stated, an arrangement in the present case whereby the decedent became a member of the Kuenstener family and

took some of the responsibility and expected to share the expenses of running the household and the proof submitted shows that she did contribute to that end, if not directly, by contribution of service, the paying of repairs and the giving of articles for furnishing the house. Whether these were gifts or not, they support the theory that she was a member of the family and had not a definite contract with the claimant, but shared with her the responsibility of running the household. Evidently she regarded the loan of money to Mrs. Kuenstener to be used in the house as an obligation and as to the house they were about to move into, she said, "We are going to fix it all up." There is no question that the woman was able to pay for anything that was done or furnished to her during the period of which she was a member of the Kuenstener family. She had money in bank and drew out $700 between the 15th of November and the beginning of December. She bought rugs, aggregating several hundred dollars, which she said she had presented to Mrs. Kuenstener. She paid $67.50 for renovating the furniture of claimant and it appears that she was to pay the interest on a mortgage which was on the house into which they moved.

Second: There was no definite testimony to fix the amount of the claim. It was shown that the decedent was able to help herself during quite a period of the time covered by the claim, that she did not require nursing except at intervals and that each period was not long. That she assisted in the housework, paid frequent visits to stores, went to Atlantic City, and was not the confirmed invalid that some of the witnesses considered her. There is no testimony showing the exact time when the services were rendered, nor what they were worth. Although there is evidence that board and lodging together with nursing are worth $40 to $50 a week, there is no testimony show-

ing when the three items contained in the claim were all present, or what they were worth separately.

This the court considered too indefinite. In support of this conclusion, the judge cites Hirst's Estate, 274 Pa. 286, 288, wherein it is stated that "a claim against the estate of a decedent must be as definite and precise as is required to recover a debt in an action at law. While formal pleadings are dispensed with, the claimant should produce evidence showing the nature and character of the debt, its origin, the terms of the contract and the exact amount claimed to be due. In an action at law he is required to show the net balance, and in the claim presented against this estate, the amount due does not appear with the exactness required in proving claims of this character." The finding of the orphans' court judge is equivalent to the verdict of the jury. It was the duty of the judge to weigh the testimony, Burke's Estate, 291 Pa. 223, and he is not bound to allow the claim because some oral evidence seems to support it. "To successfully assert a claim against a dead man's estate is being steadily made more difficult. To establish such claim by parol evidence requires proof direct and positive. The terms of the liability must be certain and definite." Judge KEPHART in Gross' Estate, 284 Pa. 73, quoted in Schwoyer's Estate, 288 Pa. 541. See Goodhart's Estate, 278 Pa. 381; Schleich's Estate, 286 Pa. 578; Davies' Estate, 289 Pa. 579. For either of the two reasons above stated, the orphans' court was right in refusing to allow the claim.

The decree is affirmed, the appellant to pay the costs.