## Donlevy's Estate

*Maurice W. Sloan* and *Charles H. Pile*, for exceptants.
*Elton J. Buckley*, contra.

STEARNE, J., November 15, 1935. — Exceptions have been filed to an auditing judge's allowance of a claim of a corporation against the decedent's estate. The claim is based upon an alleged illegal and irregular payment of corporate funds (designated on the corporate books as "interest") by the corporation itself to decedent in his lifetime. Such payments were made from July 7, 1930, to July 2, 1934. Decedent died August 22, 1934.

At the inception it must be borne in mind that: "A claim against the estate of a decedent must be as definite and precise as is required to recover a debt in an action at law. While formal pleadings are dispensed with, the claimant should produce evidence showing the nature and character of the debt, its origin, the terms of the contract

and the exact amount claimed to be due": Hirst's Estate, 274 Pa. 286; Shelton's Estate, 95 Pa. Superior Ct. 363. Also that: "Claims against a dead man's estate, which might have been made against him while living, are always the subject of just suspicion, and require clear proof before they will be allowed. Both the presumption and the suspicion above referred to gather strength with each passing year, and the evidence to overthrow them must correspondingly increase in probative effect": Gilbraith's Estate, 270 Pa. 288. We therefore approach a review of this record with the burden cast upon the claimant of establishing its claim with definiteness and precision, and the requirement of "clear proof" because of its continued payments of "interest" to decedent for four years and continuing until a few weeks prior to the death.

The claim is based upon a demand for the return of $4,375 paid by the corporation to decedent from July 7, 1930, to July 2, 1934. According to counsel for claimant these sums were improperly paid because no justification or clear legal right appears for their receipt and retention by decedent. It was admitted that decedent was chairman of the board of directors, without salary.

To prove the claim, the corporation offered the bookkeeper and the secretary of the president (two employes), who identified the corporation books and records. It also offered the secretary of the corporation (who is a stockholder) to identify the corporate minute books and records. The auditing judge properly excluded the testimony of the secretary-stockholder as incompetent under the Act of May 23, 1887, P. L. 158: Swoope's Estate, 317 Pa. 584. To substantiate the claim we are therefore relegated to documentary proof offered in evidence. This consists of the production of 10 checks drawn by the corporation to decedent aggregating $4,375 and collected by him. All of these payments are recorded in the fiscal books of the corporation under the heading: "W. H. Donlevy interest paid". These entries appear according to the bookkeeper and the secretary in the Confidential Pri-

vate General Ledger admitted in evidence. One page from the General Ledger (since July 1, 1933), was admitted in evidence. An item in this latter record (not transferred to the Private Ledger) is "December 27, 1934, check for cash found in safe $11.12". While the amount is small, nevertheless, it seems significant. If the decedent was indebted to the corporation as claimed, why did the corporation pay any cash belonging to decedent, in the corporation's possession, to decedent's estate over four months after the death? Why, if the claim is a just one, did not the corporation credit this amount on the alleged indebtedness? This is some evidence at least that on December 27, 1934, the corporation did not regard itself as a creditor.

This brings us to the consideration of the remaining documentary proof consisting of excerpts from minutes of various directors' meetings. These excerpts are set forth in the adjudication. It does not precisely appear therein under what circumstances these interest payments were to be made. The first minute of February 1, 1930, stated that decedent's "contribution be compensated for . . . at current bank rate . . . same to be deducted from any dividends"; while the next meeting of November 8, 1930, reads that decedent's "contribution of stock be compensated for . . . at current bank rate . . . same to be deducted from any dividends on the preferred stock of the corporation." What was decedent's contribution of stock? Was it corporate stock decedent donated, or does this minute refer to an interest return on money which decedent invested in the stock of the corporation? Or, was the "contribution of stock" a contribution of stock in trade, and therefore a loan, for which decedent was to receive compensation? The record and proofs are wholly silent as to this.

The next minute was of June 25, 1932, wherein the directors voted "to retire 75% of the stock now held [by decedent] on the basis of book worth". It was stated in

the minute that such resolution was in confirmation of a resolution of July 11, 1931, which was "omitted inadvertently" from the minutes of that meeting. It was then resolved "that until such time as conditions warrant the above retirement, that we pay [decedent] interest".

· The final resolution was on November 12, 1932, when it was resolved in accordance with the above resolution of June 25, 1932, that "we retire 50% on December 31, 1932 or as soon thereafter as our finances permit at .73637 per dollar"; and that immediately following the above payment of 50 percent, "we retire an additional 25% as rapidly as possible."

It is not clear, nor disclosed, what the directors meant by "retiring" decedent's corporate stock. We must assume that such language necessarily means "purchase". It is quite regular for a solvent corporation, where the rights of creditors or stockholders are not jeopardized, to purchase its own stock: Dock v. Schlichter Jute Cordage Co., 167 Pa. 370; Beltz v. Garrison et al., 254 Pa. 145; Wolf v. Excelsior Automatic Scale & Supply Co., Inc., 270 Pa. 547. It is quite equivocal from an examination of the minutes above, whether, if there was an agreement of sale, such retirement was regarded in præsenti or in futuro. It must be conceded that upon the minutes themselves no actual contract of sale or retirement can be established. Nevertheless, the minutes do reflect some sort of an agreement or arrangement between the parties. This agreement, whether written or oral, is not in evidence. It is quite possible that there was an actual agreement to purchase or retire, but that the corporation was not prepared to pay the consideration. If this were actually the case, the minutes quite properly reflect an arrangement to pay interest until the debt is liquidated. This is a common practice, and a matter of judicial knowledge, in cases of building and loan associations where stock is matured but the association is unprepared immediately to pay the surrender value. It is, however, equally true, that an inference may be drawn from this

unsatisfactory record, that decedent caused the corporation to pay him interest on his investment until his stock was in fact retired. This manifestly would be improper. Indeed, this is what the auditing judge held. But in the state of this present record, in the absence of affirmative proofs, one surmise seems as probable as another.

Upon a consideration of the entire record, a majority of the court are of opinion that the proof lacks the definiteness and precision required to maintain the claim against the estate of this decedent. This is especially true since the corporation itself voluntarily paid this interest for over four years, and until a few weeks prior to the death, made no demand for repayment in decedent's lifetime, but upon the contrary actually paid decedent's estate cash in its hands admittedly that of decedent four months after the death.

The exceptions are sustained, the claim dismissed, and the adjudication, thus modified, confirmed absolutely.

VAN DUSEN, J., dissenting.—If the facts upon which the claim rests are not clear, I agree that it cannot be maintained against a decedent's estate. When all the resolutions of the corporation are read together the subject matter appears clearly to be (as two of the resolutions say) the "stock now held by Walter H. Donlevy"; and the suggestion in the majority opinion that the reference in the two earlier resolutions may be, not to stock held by Donlevy, but to stock given by him to the company and no longer held by him, and the further suggestion that the reference may be to a "stock in trade" loaned by him, appear to me fanciful.

The majority opinion also suggests that it is not clear from the minutes whether there was a binding agreement to purchase Donlevy's stock. After reading and rereading the minutes, it still seems to me clear that there was no such agreement, and that the payments made to Donlevy were voluntary.

The claim ought not to be rejected upon a general feel-

ing that there is something undisclosed—some defense which would be revealed if Donlevy were here to assist us. This attitude might be adopted toward any claim against a decedent's estate.