*M. Williams & C. A. Williams*, for the defendant.

---

## COMMONWEALTH *vs.* BOSTON AND ALBANY RAILROAD COMPANY.
### SAME *vs.* SAME.

Suffolk. March 22. — June 30, 1886. W. ALLEN & HOLMES, JJ., absent. DEVENS, J., did not sit.

Shares of stock in a corporation are not necessarily extinguished by being transferred to the corporation, so that they cannot be reissued.

Under the St. of 1882, c. 121, § 1, providing that the Treasurer of the Commonwealth shall assign to the corporation therein named all the shares of the capital stock of the corporation which are owned by the Commonwealth, or which belong to funds over which the Commonwealth has exclusive control, in exchange for certain bonds of the corporation, at a rate specified, and that thereupon the corporation "shall hold and dispose of the shares of stock so assigned to it as its absolute property," the corporation may divide such shares among its stockholders.

THE FIRST CASE was an information in equity, filed on November 13, 1885, by the Attorney General, in pursuance of the direction of the General Court,* and alleging the following facts:

The defendant is a corporation under the laws of this Commonwealth, owning and operating a railroad therein, with the rights and privileges, and subject to the limitations and restrictions, of railroad corporations, as provided by the general laws and statutes of the Commonwealth, and especially by the St. of 1867, c. 270, § 17.†

On April 1, 1882, the corporation had an authorized and paid up capital of twenty million dollars, consisting of two hundred thousand shares of the par value of $100 each, of which twenty-four thousand one hundred and fifteen were owned in part by the Commonwealth by absolute title, and in part belonged to various funds of which the Commonwealth had exclusive control, that is to say, the following funds: the war loan sinking fund, the bounty loan sinking fund, the Troy and Greenfield Railroad sinking fund, and the Massachusetts school fund.

On April 1, 1882, the Commonwealth, in accordance with the provisions of the St. of 1882, c. 121, assigned to the defendant corporation said twenty-four thousand one hundred and fifteen

---

* The Res. of 1884, c. 61, directs the Attorney General "to institute appropriate legal proceedings, in the name of the Commonwealth, in the Supreme Judicial Court, against the Boston and Albany Railroad Company, and such other parties as may be necessary, to annul and render void the distribution among its stockholders of certain of the shares of the stock of said company, received from the Commonwealth under the provisions of " the St. of 1882, c. 121, "and to render void and of no effect the certificates of stock issued by said company whereby such distribution was effected, and such as shall be necessary to the due enforcement of the laws and protection of the rights of the Commonwealth and of the public."

The Res. of 1885, c. 72, authorizes the Attorney General, with the approval of the Governor and Council, to expend, if necessary, a sum not exceeding $18,000, to carry out the provisions of the Res. of 1884, c. 61.

† This section is as follows: "The Commonwealth may at any time purchase of the Boston and Albany Railroad Company its road and all its franchise, property, rights, and privileges, by paying therefor such sum as will reimburse it the amount ot capital paid in to the several corporations composing it, and to the Boston and Albany Railroad Company, with a net profit thereon of ten per cent a year, from the times of the payment thereof by the stockholders of said corporations, respectively, to the time of the purchase."

shares of the capital stock of the corporation at the rate of $160 per share, and the corporation gave in exchange $400 in money and $3,858,000 in five per cent bonds of the corporation, payable in twenty years from said date, which bonds were issued under the provisions of said act for the purpose of purchasing said shares, and are still outstanding and owned by the Commonwealth ; but the corporation has established no sinking fund to meet the principal or interest of said bonds, and has paid such interest out of the earnings of the corporation.   The corporation held said stock until September 27, 1883, and declared no dividends thereon, but declared dividends upon all the stock held by private stockholders at the rate of eight dollars per share annually.

The Commonwealth has annually, however, since said transfer, included said stock in making up the value of the corporate franchise of the defendant for the purpose of taxation, has assessed the defendant thereon, and the defendant has paid the taxes in the same way and at the same rate as upon the remainder of its capital stock.

On September 27, 1883, the corporation, by its directors, voted to distribute among its private stockholders seventeen thousand five hundred and eighty-eight of the shares of the capital stock received from the Commonwealth; and on December 27 following, it voted to issue certificates of stock for fractional rights under said vote of September 27.   The votes so passed were in substance as follows :

" Voted, that the treasurer be authorized to distribute to private stockholders of record at the close of business on the twenty-seventh day of September, 1883, one share for every ten shares held by the respective stockholders other than this corporation ; and to issue to holders of less than ten shares assignable certificates for fractional rights, convertible into stock at the rate of one share for every ten rights, if presented at the treasurer's office on or before the twentieth day of December, 1883, in lots of ten or multiples of ten, the purpose of this vote being to distribute to the private stockholders seventeen thousand five hundred and eighty-eight shares out of the twenty-four thousand one hundred and fifteen shares of the capital stock which were purchased from the Commonwealth of Massachusetts."

"Voted, that the treasurer may, with the consent of the finance committee, issue certificates of stock for fractional rights under the vote of September 27, 1883, distributing stock to the stockholders when presented in lots of ten or multiples of ten, and pay, after December 31, 1883, such dividends thereon as the holders would have been entitled to if the record title to such shares had been completed before November 30, 1883."

All of said seventeen thousand five hundred and eighty-eight shares have been distributed under said vote, and six or more dividends of $2 per share have been declared and paid upon said shares from the earnings of the corporation. When the vote to distribute said shares was passed, the defendant had undivided surplus earnings as follows: on September 30, 1882, the end of its fiscal year, there was a profit and loss balance of $2,632,921.58, and on September 30, 1883, this balance amounted to $2,798,795.17. The stock so distributed by vote of September 27, 1883, at $160 per share, the rate paid by the defendant corporation, amounted in value to $2,814,080, and was charged at that amount on the books of the corporation against the profit and loss balance; but the market value of such stock as was sold on September 27, 1883, was $167 per share. Beyond the $2,798,795.17 mentioned above, the defendant corporation had, on September 27, 1883, no surplus earnings applicable to dividends, unless a certain fund, called the "improvement fund" on the books of the company, is considered as such. This fund was created as follows:

On October 16, 1879, surplus earnings to the amount of $450,000 were set apart according to the following vote: that such earnings, "amounting in the aggregate to four hundred and fifty thousand dollars, be and the same are hereby set apart and constituted a fund to be known as and called an 'improvement fund,' to be subject to such disposition and uses as may from time to time be determined by this board;" on October 28, 1880, further surplus earnings to the amount of $300,000 were added to the fund, according to the following vote: "October 28, 1880. Voted, that the sum of three hundred thousand dollars be added to the improvement fund, and that the same, with any accretions already or hereafter made to said fund, shall be subject to such disposition and uses as may from time to time be determined by this board."

These two sums, with accretions thereon, made up the amount of the improvement fund on September 30, 1883, to the sum of $761,804.29; but there was no vote of the directors of the corporation authorizing the trustees to distribute such fund, or any part of it, to and among the stockholders of the corporation, or authorizing them to use such fund for the purpose of making good any distribution of stock or other assets, or to reincorporate such fund into the profit and loss balance.

The information further alleged that this stock so distributed neither was nor represented earnings of the corporation, but was obtained by incurring a funded indebtedness; and that the distribution of said stock was not authorized by the St. of 1882, was gratuitous and without consideration paid by the stockholders or any of them, and was illegal and in violation of the rights of the Commonwealth under the statutes thereof, and especially of its right under the St. of 1867, c. 270, § 17, to purchase of the corporation its road and all its franchise, property, rights, and privileges, by paying therefor a sum therein fixed, and under the Pub. Sts. c. 112, § 61.

The prayer of the information was that the certificates of stock of said seventeen thousand five hundred and eighty-eight shares, or so many of them as have been distributed, be declared void; that the corporation be restrained from paying any dividend on said stock so distributed, and commanded to call in said stock; and for other and further relief.

The defendant demurred to the information, and assigned as causes of demurrer the following: "1. None of the stockholders of the defendant corporation, among whom the bill alleges that the shares of stock were distributed which the plaintiff asks to have declared void, are made parties to the said bill. 2. The plaintiff has not stated in its bill such a case as entitles it to any relief in equity against the defendant. 3. The plaintiff has not stated in its bill such a case as entitles it to the relief prayed for."

THE SECOND CASE was a similar information, containing the same allegations as the first, and also alleging that the corporation, by its directors, intended to distribute the remaining six thousand five hundred and twenty-seven shares of the twenty-four thousand one hundred and fifteen shares received.

The prayer was that said corporation be restrained during the pendency of the suit from making any distribution of said six thousand five hundred and twenty-seven shares; and for further relief.

The defendant demurred to this information, for want of equity.

Hearing before *Field*, J., who reserved the cases for the consideration of the full court.

*H. N. Shepard*, Assistant Attorney General, (*E. J. Sherman*, Attorney General, with him,) for the Commonwealth. 1. It is conceded that there is no want of necessary parties defendant in the second case, since the information seeks to restrain the defendant from distributing shares as yet in its sole possession and control, and to which the shareholders have no legal or equitable right. Moreover, the shareholders are not necessary parties defendant in the first case, since no remedy is sought against them personally, but only the corporation is sought to be restrained from paying dividends upon said stock so distributed. No new or different questions can or will arise, if they be made parties, than are presented now, in the present action against the corporation only; and, assuming that the shareholders should have been made parties defendant, it nevertheless is useful and proper to consider the real question of the case, because it is so far probable as almost to be certain, that, if the court shall decide the distribution of the shares to be illegal, the corporation will not insist upon the joining of its shareholders as parties to the bill before submitting to an adequate remedy. *Boston & Lowell Railroad* v. *Commonwealth*, 100 Mass. 399. *Cornell* v. *Mayor & Aldermen of New Bedford*, 138 Mass. 588.

2. Since the defendant has manifested its intention to distribute the shares as yet in its possession, it is proper for this court now to restrain it from so doing, and it is not obliged to wait until the evil is done before interfering. *Attorney General* v. *Boston*, 123 Mass. 460.

3. The gratuitous distribution by the defendant among its shareholders of the shares obtained from the Commonwealth is a stock dividend, and, as such, prohibited by the Pub. Sts. *c.* 112, § 61. This section prohibits: first, an increase of capital stock beyond the fixed maximum; secondly, a stock dividend; thirdly,

.a division of the proceeds of the sale of stock; and, fourthly, the issue of stock when the par value has not been paid in cash. Consequently, a stock dividend is not necessarily an increase of capital, although the latter ordinarily is a result of the former, nor necessarily an issue of stock for which the par value was never paid, since there are distinct prohibitions against such increase and such issue, and the words " stock dividend " will otherwise have no separate meaning.  A gratuitous distribution of stock, no matter whether treasury stock previously unissued or stock once issued and bought back, as here, is a stock dividend.

This position is sustained by the third prohibition of § 61. There can be no legal division of the proceeds of the sale of stock, whether it be stock then first issued, or stock formerly issued and subsequently acquired by the corporation.  Equally, the second prohibition applies to both descriptions of stock. The purpose of the section evidently is to make a comprehensive prohibition of the gratuitous division of the stock or capital as distinct from the earnings.  Being a stock dividend, it was and is illegal, not only by the provisions of the section, but also upon general equitable grounds.  A corporation has no right to make such a dividend, and can be restrained, upon application of a shareholder or of a creditor.

4. The Commonwealth is entitled to an injunction against such a stock dividend: 1st. As a creditor of the defendant, holding its bonds to a large amount.  2d. As a remainderman with vested rights of purchase.  St. 1867, c. 270, § 17.  3d. As a sovereign, at the suit of the Attorney General, for violation of express statutes, and on general equitable grounds.

5. If not a stock dividend, then it is a gratuitous distribution among the shareholders of corporate property or assets, both inequitable and illegal.  It is not a distribution of surplus profits.  Upon its face it is a distribution, not of surplus profits, but of stock, with very different resultant liabilities, both as to shareholders and creditors.  Whatever surplus profits had accumulated in the past, they did not then exist as actual cash, but had been applied otherwise by the directors.  The value of the stock so distributed, even at its cost price, and much more at its market value, exceeded the profit and loss balance then on

the books of the defendant. *Williams* v. *Western Union Telegraph,* 9 Abb. New Cas. 419. *Hatch* v. *Western Union Telegraph,* 9 Abb. New Cas. 430.

6. Whether a gratuitous distribution of stock or of assets, the shares were obtained by incurring a bonded indebtedness, and the distribution is, in fact, that of capital or of borrowed money  It is an act of waste, as if the defendant had sold its rolling stock and divided the proceeds, and such waste the Commonwealth may enjoin, in its capacity as creditor and in its vested right to purchase.

7. The St. of 1882, *c.* 121, does not authorize such distribution by the defendant. The words, "and thereupon said corporation shall hold and dispose of the shares of stock so assigned to it as its absolute property," clearly do not sanction a departure from the established policy of the Commonwealth, nor a violation of the laws thereof. They free the shares from certain trusts theretofore existing, and enable the corporation to own and hold its own shares, since otherwise they would have been cancelled, *ipso facto.*

*A. L. Soule,* for the defendant.

C. ALLEN, J. The Pub. Sts. *c.* 112, § 61, forbid a railroad corporation, without authority of the General Court, to increase its capital stock beyond the fixed maximum, to declare a stock dividend, to divide the proceeds of the sale of stock among its stockholders, or to issue certificates of stock when the par value of the shares so issued is not first paid in cash to its treasurer. It is contended on the part of the Commonwealth that the actual and the intended distribution of shares by the defendant are in violation of this section, such distributions being stock dividends. Literally, they are so ; but it is certainly open to grave doubt whether a division of shares which have once been fully paid for to a corporation, and have since been purchased by such corporation with its surplus earnings, would fall within the mischief intended to be guarded against by the statute, and properly be termed a "stock dividend" within its meaning. We give no further consideration to this question, because the surplus earnings do not appear to be sufficient fully to cover the distribution which the second information alleges is intended, and because we are of opinion that the informations must be dismissed upon

another ground, namely, that by a fair construction of the St. of 1882, *c*. 121, the authority of the General Court was given for the division of the shares in question.

The Commonwealth sustained towards the defendant a double relation, as sovereign and as shareholder. Wishing as shareholder to negotiate an exchange of its shares for bonds of the corporation on certain terms, it enacts as sovereign that, upon such assignment to the corporation of the shares, the corporation shall hold and dispose of the same as its absolute property. It was known that the corporation had undivided surplus earnings to a large amount, which entered into and increased the market value of the shares. At the end of the first fiscal year after the passage of the St. of 1882, these surplus earnings amounted to $2,632,921. It is implied in the information, and conceded in the argument, that these surplus earnings might have been divided among the stockholders. The price of the shares transferred by the Commonwealth was $3,858,400. The St. of 1882, in express terms, authorized the corporation to dispose of the shares assigned to it by the Commonwealth; but on the literal construction of the Pub. Sts. *c*. 112, § 61, now insisted on, the corporation would not be at liberty to divide the proceeds of such sale among its stockholders, even to an amount equivalent to its surplus earnings. The fact that the payment for the shares was made wholly in bonds, instead of being made partly in bonds and partly by the direct application of surplus earnings in the form of cash or cash assets, cannot be of such significance as to change the rights and obligations of the corporation. Its financial condition would in effect remain the same. Upon the construction contended for by the Commonwealth, if surplus earnings had been used directly in payment for these shares, the corporation would thereby have lost the power in any form to divide such earnings or their equivalent among its stockholders, and the authority to purchase, hold, and dispose of the shares so assigned to it as its absolute property would be a restriction instead of a privilege. But the Legislature plainly was intending to confer a privilege, to add something to the powers which the corporation would otherwise have possessed. It is argued that the intention was to free the shares from certain trusts theretofore existing, and enable the corporation to own and hold its own

shares, since otherwise they would have been cancelled *ipso facto.* We are not aware of any such trusts that would not be extinguished by the mere transfer of the shares; and it has not been considered in this Commonwealth that shares in a corporation are necessarily extinguished by being transferred to the corporation, so that they cannot be reissued, or that the amount of capital stock is thereby reduced. *Crease* v. *Babcock,* 10 Met. 525, 556. *American Railway-Frog Co.* v. *Haven,* 101 Mass. 398, 402. *Dupee* v. *Boston Water Power Co.* 114 Mass. 37, 43. Nor has such a rule prevailed in this country generally. *City Bank* v. *Bruce,* 17 N. Y. 507. *Coleman* v. *Columbia Oil Co.* 51 Penn. St. 74. *State* v. *Smith,* 48 Vt. 266, 285. *Williams* v. *Savage Manuf. Co.* 3 Md. Ch. 418, 452. *Taylor* v. *Miami Exporting Co.* 6 Ohio, 176, 219. *Robison* v. *Beall,* 26 Ga. 17, 28. *Hartridge* v. *Rockwell,* R. M. Charlt. 260. See also *Currier* v. *Lebanon Slate Co.* 56 N. H. 262, 268.

There was therefore no occasion to add the clause in question for the purposes suggested in the argument for the Commonwealth. These purposes failing as an explanation, no other purpose is suggested to account for the language of the statute. We are left to put such a construction upon it as it naturally bears, in view of the circumstances under which the statute was passed, having regard to the financial condition of the corporation, and to the position of the State as a contracting party, certainly intending to offer to the corporation some inducement to make the purchase. The natural meaning of the words used imports an authority to dispose absolutely of all the purchased shares, free from all conditions and restrictions. They are classed together as a whole. Whatever authority is given in respect to any of them is given in respect to all. It can hardly be supposed, under any circumstances, that the Legislature would intend to restrict the distribution of purchased shares equal in value to the amount on hand of surplus earnings, which might be distributed at the pleasure of the corporation. Looking at the whole statute, we are brought to the conclusion that the past and contemplated action of the corporation is within its authority.                                      *Informations dismissed.*