FREMONT CARRIAGE MANUFACTURING COMPANY V. CHRIS
THOMSEN.

FILED JULY 1, 1902. No. 11,890.

Commissioner's opinion, Department No. 2.

1. **Corporation: Stock: Statute: Dealing in its Own Stock.** A corporation, when not prohibited by its articles or by statute, may buy and sell its own stock, and hold, reissue or retire the same, provided such act is done in entire good faith and in no manner injures the rights of its creditors or its stockholders.

2. **Contract: Non Ultra Vires: Rights of Purchaser.** A contract with a corporation by which it sells certain of its shares of stock and agrees to repurchase the same upon the happening of a certain specified event, is not *ultra vires;* and for a breach thereof the purchaser may recover of the corporation the amount agreed upon as the price of such repurchase.

3. ———: ———: ———: **Benefits Retained: Remainder Repudiated.** Where such a contract has been made by the corporation, by and through its president and general manager, it will not be permitted to receive and retain the benefits of a portion thereof and repudiate and reject the remainder. *Citizens' State Bank v. Pence,* 59 Nebr., 579.

4. **Corporation: Shares of Stock: Contract of Purchase.** A contract for the purchase of certain shares of stock in a corporation and for the repurchase of the same upon the happening of a certain event, where it has been fully performed by one of the parties thereto, is not within the statute of frauds.

5. ———: **Agent: Acts Which Create no Personal Liability.** Where one acting as the agent of a corporation makes a contract on its behalf, which is binding upon it, his acts in that behalf create no individual or personal liability against him.

ERROR from the district court for Dodge county. Tried below before GRIMISON, J. *Affirmed.*

*Frank Dolezal,* for plaintiff in error.

*Stinson & Martin, contra.*

BARNES, C.

On the 6th day of February, 1899, Chris Thomsen filed his petition in the district court for Dodge county

against the Fremont Carriage Manufacturing Company, a corporation duly organized and existing under the laws of this state, and one John Bunt, to recover the sum of $800, and interest thereon, from the 4th day of September, 1897. It was alleged in his petition that the Fremont Carriage Manufacturing Company was a corporation, and that on or about the 1st day of February, 1894, he entered into a contract with the said Fremont Carriage Manufacturing Company, by and through its president and general manager, John Bunt, and with the defendant John Bunt jointly and severally, by the terms of which it was agreed that the plaintiff should purchase eight shares of the capital stock of the Fremont Carriage Manufacturing Company from the defendants named in the petition, at the par value of $100 per share. And in consideration of such purchase the defendants agreed to furnish the plaintiff employment in the shops of the said defendant company, in the city of Fremont, Nebraska, at a salary of $35 per month, which was to be increased as the ability of the plaintiff and the business of the corporation increased. It was alleged that it was further agreed between the parties that if the defendants should, at any time, desire to discharge the plaintiff, and terminate the contract to furnish him employment in the shops of said corporation, they might do so by purchasing from the plaintiff the eight shares of capital stock owned by him at par value; that on February 5, the plaintiff, under said contract, did purchase said shares of capital stock of the corporation from the defendants, and paid therefor the sum of $800; that he commenced work in the shops under said agreement on or about the 5th of February, 1894, and at a salary of $35 per month; that about the first of April, 1894, his salary was increased to $40 per month; that he continued to work, under said contract, for the defendants, until on or about the 4th of September, 1897, when the defendants, without any just cause, discharged him and broke said contract and refused to purchase from him the eight shares of capital stock of the corporation which

were purchased by him and held under said contract; that the defendants have ever since, and still do, refuse to purchase from the plaintiff the said eight shares of capital stock, though he has often requested them so to do, and has tendered to them the said stock and demanded the payment of the money therefor. The petition concluded with a prayer for a judgment against the defendants for the sum of $800, with interest thereon from the 4th of September, 1897, together with costs of the action. To this amended petition the Fremont Carriage Manufacturing Company filed an answer, admitting its incorporation; admitted that it employed the plaintiff, and that plaintiff was in its employment for the time alleged in his petition. It also admitted the fact that it sold to the plaintiff the eight shares of its capital stock, but denied that either the employment or the sale of the stock were under the contract set forth in plaintiff's petition, and denied the contract set forth therein. It further alleged that its said shares of capital stock were sold to the plaintiff without any condition to purchase or repurchase the same, and that, so far as the corporation was concerned, it never had any notice or knowledge and was never informed by any one that the stock was not sold absolutely and without condition. It further alleged that it had parted with its capital stock, and had accepted the moneys therefor from the plaintiff, in the belief and upon the reliance that the same was sold absolutely and unconditionally, all of which said plaintiff knew at the time. It was further alleged that the stock was placed on sale, under and pursuant to an order of the board of directors; that it was sold absolutely and without condition; and that the sale was reported to the defendant as an absolute and unconditional sale, all of which was well known to the plaintiff at the time he took the said stock and paid the money therefor to the defendant. The separate answer of John Bunt denied every allegation contained in the petition, except that the plaintiff purchased eight shares of the capital stock of the defendant the Fremont Carriage

Manufacturing Company, which was admitted. It was also admitted that the plaintiff was in the employment of the company, but it was denied that said purchase of stock and said employment were under the contract set forth in the plaintiff's petition; and it was denied that there was in existence, at any time, the contract alleged in said petition. It was further alleged in his answer that the Fremont Carriage Manufacturing Company is, and at all times therein mentioned was, a corporation duly organized and existing under and by virtue of the laws of the state of Nebraska. It was also averred that the plaintiff, on or about the 5th of February, 1894, was employed by the defendant, the Fremont Carriage Manufacturing Company, and remained in the employ of said company until on or about the 4th of September, 1897; that in said hiring, and the contract therefor, he, the defendant Bunt, acted as the agent and employee of the said company, under orders given by the corporation, about the duties of the plaintiff in his employment; that he did not act at any time in his own individual capacity, all of which was well known at the time to the plaintiff. It was denied by said Bunt that he ever employed the plaintiff for himself, or in his own behalf, and it was denied that plaintiff ever performed any labor or duty for or on his behalf. It was further stated in said answer that the plaintiff purchased eight shares of the capital stock, of and from the defendant, the Fremont Carriage Manufacturing Company, at and for the price of $100 per share; that in making said contract of sale between said company and said plaintiff, he, said Bunt, acted solely as the agent and on behalf of said company, and in nowise for himself, all of which was, at the time, known to the plaintiff, as also the existence and scope of authority of said agent; that such capital stock was the property of said company, and not his property, which was well known to the plaintiff; that the moneys paid for said stock were paid to the company, and that he, the defendant, received no part thereof; that the capital stock was sold to the plaintiff absolutely, and

without any condition of repurchase. To these answers, Thomsen filed the proper replies, and upon the issues thus joined the cause was tried to a jury. After the introduction of the evidence, on the motion of the defendant John Bunt, the court dismissed the action as to him, and the trial proceeded against the Fremont Carriage Manufacturing Company. Thereupon the carriage company filed a motion asking the court to direct the jury to return a verdict in its favor, which was overruled, and the cause was submitted to the jury. A verdict was returned for Thomsen against the carriage manufacturing company for the sum of $899.24. A motion for a new trial was filed and overruled, and the carriage company prosecuted error to this court. Thomsen excepted to the order and judgment of the court dismissing the case as to the defendant John Bunt; filed a motion for a new trial, which was overruled; and after the case was brought to this court he filed a cross-petition in error herein. Hereafter the Fremont Carriage Manufacturing Company will be called the plaintiff, and Thomsen will be called the defendant.

1. The only assignment of error presented in plaintiff's brief and argued orally by its counsel upon the hearing, is, that the court erred in overruling its motion and in not directing or instructing the jury to return a verdict in its favor. This requires us to first determine whether the evidence was sufficient to establish the contract or agreement, as alleged in the defendant's petition. On the trial, the defendant and his brother, John Thomsen, who was present at the time the agreement was entered into, both testified as to the matter, and their evidence was sufficient to establish the fact that the contract was made precisely as it was set forth in the petition. John Bunt testified for the plaintiff herein, and partially disputed the evidence of these two witnesses; yet he persisted in saying that he did not remember what was said in relation to the repurchase of the stock. Therefore the evidence was amply sufficient to establish the existence of the contract, and that question was properly submitted to the jury.

We are next required to determine the question of the validity of the contract. If it is valid it would have been reversible error to refuse to submit the questions involved to the jury. Plaintiff contends that the contract was a secret agreement on the part of the plaintiff to purchase its own shares, and thus reduce the amount of its capital stock; that such an agreement was against public policy, was a fraud upon the stockholders and creditors, and therefore void. It is also urged that there was a lack of power on the part of plaintiff to enter into or perform its agreement. The overwhelming weight of authority is that, unless prohibited by the statute or its charter, a corporation may purchase its own shares of stock, to a reasonable amount, and for a legitimate purpose. Beach, Private Corporations, sec. 395; *Dupee v. Boston Water Power Co.*, 114 Mass., 37; *Chicago, P. & S. W. R. Co. v. President of Town of Marseilles*, 84 Ill., 643; *City Bank of Columbus v. Bruce*, 17 N. Y., 507; *Iowa Lumber Co. v. Foster*,* 49 Ia., 25; *Taylor v. Miami Exporting Co.*, 6 Ohio, 176; *Rollins v. Shaver Wagon & Carriage Co.*,† 45 N. W. Rep. [Ia.], 1037. In this case no limitation on such power is contained in the plaintiff's articles of incorporation or in the statutes. The purchase by a corporation of its own stock does not necessarily decrease its capital stock. The corporation may hold it and resell or reissue it at any time. Cook, Stocks, Stockholders & Corporation Law, sec. 282; *City Bank of Columbus v. Bruce*, 17 N. Y., 507; Beach, Private Corporations, sec. 395; *First Nat. Bank v. Salem Capital Flour-Mills Co.*, 39 Fed. Rep. [C. C., Ore.], 89; *Clapp v. Peterson*, 104 Ill., 26. In the case at bar there is no showing that any creditor or stockholder of the corporation is or will be injured by the transaction, and it is not even suggested that the corporation is insolvent, or in the process of dissolution. In the case of *Iowa Lumber Co. v. Foster, supra*, the president by letter had agreed that the corporation would purchase Foster's stock in case he ceased to be its secretary and treasurer. Held, that

* 31 Am. Rep., 140.    † Am. St. Rep., 427.

the contract was not *ultra vires,* and that Foster was entitled to recover the value of his stock. In the case of *Vent v. Duluth Coffee & Spice Co.,* 67 N. W. Rep. [Minn.], 70, the plaintiff purchased from the defendant corporation a number of shares of its capital stock, by an agreement which provided that at the end of a certain time he could, at his option, return the stock and receive back the purchase price. The plaintiff exercised the option, offered to return the stock, and demanded the purchase price. The court held that the agreement was in the nature of a conditional sale, with an option to the purchaser to revoke or rescind, and as between the plaintiff and defendant, the rights of creditors not being involved, the agreement by the defendant to receive back the stock and pay back the price thereof was not *ultra vires;* and a judgment for the face value of the stock was sustained. In *Browne v. St. Paul Plow Works,* 64 N. W. Rep. [Minn.], 66, one B. sold and delivered to P., a corporation, certain letters patent for the consideration of the issue and delivery to B. by P. of sixty shares of its capital stock and its agreement to redeem the same in cash at its par value of $3,000, at the end of five years, if so requested by B., which he did, and tendered back the shares of stock to the corporation, which refused to pay him the sum of $3,000, but retained the letters patent, and made no attempt to rescind the contract. It was held that B. was entitled to recover as his damages the agreed value of the stock, viz., $3,000. Under the pleadings in this case plaintiff's right to urge the defense of *ultra vires* may well be doubted. The defense of *ultra vires* is not pleaded in the answers herein. In *Citizens' State Bank v. Pence,* 59 Nebr., 579, it was held by this court that the defense of *ultra vires* is not available under a general denial. We hold that the contract in this action was valid in so far as the right of the plaintiff to purchase or agree to repurchase its own stock was concerned.

2. It is shown by the record herein that John Bunt was, by a resolution of the board of directors, made the presi-

dent and general manager of the company, with full power to transact its business. In fact it is shown that he not only transacted all of the business of the corporation, but that he handled all of its funds. The treasurer testified that although he had held that office for a number of years, he never saw any of the money. Therefore, when Bunt sold the stock to the defendant in error, and entered into the contract in question herein with him, he acted for and on behalf of the plaintiff, and it is bound by his acts. The plaintiff accepted the defendant's money under the agreement in question, and had the use of it for more than three years without interest. It never paid the defendant any dividends upon the stock, and it can not so ratify the contract of its agent in part, and repudiate or reject the remainder. *Citizens' State Bank v. Pence, supra.*

3. The plaintiff contends that the contract is void under the statute of frauds. This question was not raised by the pleadings and is not available in any event, for the reason that the contract was fully performed on the part of the defendant, and was not, therefore, subject to that defense. We hold that the questions at issue were properly submitted to the jury; that the verdict is sustained by sufficient evidence, and we therefore decline to disturb it.

4. Upon the contention of the defendant, contained in his cross-petition in error herein, we hold that, it having been fully established that John Bunt in making the contract and agreement with him acted for and on behalf of the plaintiff,—that his acts were binding upon it,—it necessarily follows that such action and agreement created no individual or personal liability against him. Therefore the court did not err in dismissing the action as to him. We decline to interfere with the ruling of the court upon the question of the allowance of interest upon the verdict. Having sufficiently discussed the propositions presented for our consideration in the record, we recommend that the judgment of the district court be affirmed.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.