**SAN ANTONIO HARDWARE CO. v. SANGER.†**

(Court of Civil Appeals of Texas. San Antonio. Oct. 30, 1912. On Motion for Rehearing, Dec. 18, 1912.)

1. CORPORATIONS (§ 376*)—CORPORATE POWERS—PURCHASING OWN STOCK.

In the absence of charter or statutory prohibition, a solvent corporation, with the assent of its stockholders, may in good faith purchase its own stock for the purpose of settling the differences in its management and preserving its business integrity, although it pays more than the market price therefor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1530; Dec. Dig. § 376.*]

2. CORPORATIONS (§ 388*) — CONTRACTS — RIGHTS AND LIABILITIES ON CONTRACTS—ULTRA VIRES.

Where a corporation's ultra vires contract has been fully executed, the courts will not interfere with the rights acquired under such contract, and, where such contract is wholly executory on both sides, neither party is estopped to deny its validity; and hence, where a corporation has purchased its own stock and received the benefit of the contract, it cannot, in an action on notes given therefor, set up the defense that the purchase was ultra vires.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. § 388.*]

3. CORPORATIONS (§ 519*)—ACTION ON NOTES—EVIDENCE.

Evidence, in an action against a corporation upon notes given by it as part of the purchase price of its own stock, held to show that the corporation, at the time of the purchase of its stock, was solvent and its stock at par.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2085, 2088–2093; Dec. Dig. § 519.*]

4. CORPORATIONS (§ 537*) — ACTS OF INSOLVENCY — ABILITY TO PAY DEBTS — "INSOLVENCY."

"Insolvency," as the term is ordinarily used, is not the same thing as a mere failure to pay debts, but, in the case of an individual or corporation, it means an insufficiency of property and assets to pay debts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2150; Dec. Dig. § 537.*

For other definitions, see Words and Phrases, vol. 4, pp. 3647–3655; vol. 8, p. 7689.]

On Motion for Rehearing.

5. CORPORATIONS (§ 376*) — POWERS — PURCHASE OF OWN STOCK—STATUTES.

Acts 1907, c. 166, § 3 (Rev. Civ. St. 1911, art. 1152), which authorizes a retirement or decrease of a corporation's capital stock, does not prohibit a corporation from purchasing its own stock to settle differences in its management and preserving its business integrity, with the intention of reissuing and selling it again,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes
† Application for writ of error pending in Supreme Court.

especially where the seller knew of the directors' resolutions setting forth such intention.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1530; Dec. Dig. § 376.*]

6. CORPORATIONS (§ 67*)—PURCHASE OF OWN STOCK—REDUCTION OF STOCK.

When a corporation buys shares of its own capital stock, the capital stock is not reduced by that amount, nor is the stock merged.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 181–183, 449; Dec. Dig. § 67.*]

7. CORPORATIONS (§ 244*) — TRANSFER OF STOCK—LIABILITY OF TRANSFEREE.

The transferror of corporate stock directly to the corporation itself without the intervention of a trustee is not released from his liability on the stock, but is liable as though no transfer had been made.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 960–977; Dec. Dig. § 244.*]

Appeal from District Court, Bexar County; A. W. Seeligson, Judge.

Action by W. W. Sanger against the San Antonio Hardware Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Terrell & Terrell, of San Antonio, for appellant. Shook & Vanderhoeven, Houston, Boyle, Storey & Davis, E. Pendleton Lipscomb, and Phil H. Shook, all of San Antonio, for appellee.

FLY, J. This is a suit by appellee on two promissory notes for $4,000 each, executed by appellant, credits being admitted of $5,066.67, leaving a balance due of $3,765.97, with interest at the rate of 5 per cent. per annum from January 25, 1910, and 10 per cent. attorney's fees. The defense was that appellee was a stockholder in the company, which was a corporation duly incorporated by the laws of Texas, holding 45 shares; that his wife also held 45 shares; that B. J. Sanger, Joseph W. Sanger, and Edwin Oppenheimer each held 10 shares which they indorsed to appellee, and he endeavored to sell all of said shares, namely, 120 shares, to the company for $12,000, and said corporation endeavored to purchase the same and paid to him $4,000 in cash and executed to him the two notes upon which the suit was based; that said transaction was ultra vires and null and void; that said corporation had no authority to purchase its own stock, and the effect of the same was to reduce the capital stock of said corporation in a manner unauthorized by law and unjustified by its financial condition, which was bad. Appellant offered to issue 120 shares of stock to appellee, and prayed for a cancellation of the notes and for judgment for the sums of money paid to him by appellant. The cause was tried by the court, without a jury, and judgment was rendered in favor of appellee in the sum of $4,312.84, with interest at 5 per cent. per annum from date of the judgment and all costs.

It is admitted that the notes which form the basis of this suit were given as part of the purchase money of 120 shares of stock in the corporation; said shares having been sold by appellee to appellant on April 28, 1908. The execution of the notes, as well as the payment of the cash, $4,000, was duly authorized by the corporation. In the resolution authorizing the purchase of the shares it was provided "that the shares so purchased shall not be retired or merged, but shall be resold and reissued under the direction of the board of directors," and provision is made for the application of the money arising from such sale. On May 25, 1908, a special stockholders' meeting was held, and the purchase of the shares was in all things unanimously "ratified and confirmed." There was evidence tending to show that when the stock was sold it was worth its face value or more. There was evidence to show the solvency of the corporation at the time the stock was purchased and the notes executed. At the time that the purchase was authorized, the president of the corporation reported that "the financial condition of the company will not be injuriously affected by said purchase, and the available resources of the company will still be much more than double the amount of all of its obligations." Stock of the company had been selling, prior to the sale in question, at par. No creditor has ever objected to the purchase of the stock from appellee, and the statements of the corporation show that its assets were largely in excess of its liabilities. The purchase of the stock was made in good faith for the preservation of the integrity of the corporation. The corporation was chartered under the provisions of title 21, subd. 25, art. 642, Rev. Statutes 1895.

[1] There is no provision in the charter prohibiting the purchase of its stock by the corporation, nor is such action prohibited by the statutes of Texas, and in the absence of such provisions in charter or statute the general rule, as applied to corporations by the weight of authority, seems to be that a solvent corporation has the authority to purchase its own stock, where the purchase is made in good faith. It was so held in Howe Grain & Mercantile Co. v. Jones, 21 Tex. Civ. App. 198, 51 S. W. 24, and that case has been cited with approval in several state courts, and the doctrine of that case is recognized and sustained in a large majority of the states of the Union. We cite some of the authorities which have been thoroughly collated by counsel for appellee: Cook on Corp. §§ 311, 312, 313; Adam v. Investment Co., 33 R. I. 193, 80 Atl. 426; Leonard v. Draper, 187 Mass. 536, 73 N. E. 644; Shoemaker v. Washburn, 97 Wis. 585, 73 N. W. 333; Blalock v. Mfg. Co., 110 N. C. 99, 14 S. E. 501; Bank v. Bruce, 17 N. Y. 507; Lumber Co. v. Telephone Co., 127 Iowa, 350, 101 N. W. 742, 69 L. R. A. 968, 109 Am. St. Rep. 387; U.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

S. Mineral Co. v. Camden, 106 Va. 663, 56 S. E. 561, 117 Am. St. Rep. 1028; Insurance Co. v. Swigert, 135 Ill. 150, 25 N. E. 680, 12 L. R. A. 328; Chapman v. Iron Clad Co., 62 N. J. Law, 497, 41 Atl. 690; Hartley v. Pioneer Works, 181 N. Y. 73, 73 N. E. 576. A number of federal courts hold to the same doctrine. The rule is thus clearly stated in the cited case of Leonard v. Draper by the Supreme Judicial Court of Massachusetts: "The only question as to legality which has been brought to our attention arises from the fact that the note was given for capital stock of the corporation which its officers thought it desirable to have the corporation buy. It is suggested that the purchase of shares of its capital stock by a street railway company is illegal, and that therefore a note given in payment for such is void. We have been referred to no authority in support of this proposition. * * * The right of corporations to purchase their own stock, unless forbidden by statute, has been recognized. Dupee v. Boston Water Power Co., 114 Mass. 37, and cases cited. We discover no element of illegality in the note."

In the cited case of Shoemaker v. Washburn it was held by the Supreme Court of Wisconsin: "The corporation was perfectly solvent at the time of its purchase of the Powers stock. No stockholder makes any complaint of such purchase. No creditor then existing is here complaining of such purchase. In fact, the plaintiffs appear to be the only creditors of the corporation, and its liability to them was not incurred until seven months after the purchase. There is nothing to impeach the good faith of any of the officers or directors of the corporation." The facts of the case at bar make it a stronger one than the cited case for the application of the doctrine stated. The stockholders in this case ratified the purchase of the stock, and no creditor has been heard to complain of the purchase. The purchase of the stock was represented by the president of the concern, now the sole witness for appellant, to be a method that had been devised "by which the differences heretofore existing among the officers of the company can be settled and removed and a harmonious management of the company's affairs can be effected." Further, he represented to the board of directors "that the financial condition of the company will not be injuriously affected by said purchase, and the available resources of the company will still be much more than double the amount of all of its obligations; that, unless the difficulties arising from the dissensions under which the company has labored can be removed, the company will suffer great and irreparable loss, if not insolvency; that the removal of such difficulties, which can be consummated by said purchase, will enable the company to conduct its business hereafter with success and profit; and that the purchase of said 220 shares at the price and upon the terms stated is fair to all

parties and very advantageous to the company."

The act of purchase of the stock might be ultra vires because beyond the powers conferred in its charter—that is, unauthorized by its charter—and still it would not follow that such act would not give rise to legal or equitable rights and liabilities. It was at one time held that no ultra vires act could bind a corporation or create liabilities to it. That is not the modern view, however, for it has been repudiated in a number of cases and the better view is that there is nothing in the nature of a corporation which would prevent it from acquiring rights and incurring liabilities through an ultra vires act.

[2] It has been often held, and may be considered settled, that when an ultra vires contract with a corporation has been fully executed the courts will not interfere with the rights acquired under that contract. First Nat. Bank v. Stewart, 107 U. S. 676, 2 Sup. Ct. 778, 27 L. Ed. 592; Parish v. Wheeler, 22 N. Y. 494; Holmes v. Holmes, 127 N. Y. 252, 27 N. E. 831, 24 Am. St. Rep. 448; Wilson v. Carter Oil Co., 46 W. Va. 469, 33 S. E. 249. Where the ultra vires contract is wholly executory on both sides, neither party is estopped to deny the validity of the contract. Nassau Bank v. Jones, 95 N. Y. 115, 47 Am. Rep. 14. There is a conflict of opinion as to whether the full performance of an ultra vires contract by one of the parties to it would authorize an action to require performance on the part of the other. In New York, Pennsylvania, Wisconsin, New Jersey, Indiana, Kentucky, Michigan, Mississippi, and perhaps other states, it has been held that when a contract with a corporation is merely ultra vires, not being prohibited by law and not contrary to public policy, and the party contracting with the corporation has performed his part of the contract, his action cannot be defeated by a plea of ultra vires on the part of the corporation. Bath Gaslight Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664. The same rule has been adopted in Texas. Railway v. Gentry, 69 Tex. 625, 8 S. W. 98; Bond v. Terrell Mfg. Co., 82 Tex. 309, 18 S. W. 691; Bank v. Oil Co., 24 Tex. Civ. App. 645, 60 S. W. 828. These decisions are based on the application of the doctrine of estoppel. In Bond v. Terrell it was said: "It seems now to be settled by the great weight of authority that where there is a question of contract between a corporation and another party, and the contract has been performed by the other party, and the corporation has received the benefit of the contract, it will not be permitted to plead that on entering into the contract it exceeded its chartered powers." In this case appellee had fully complied with his part of the contract and appellant is estopped to deny its liability.

It was said in the case of Lowe v. Pioneer Threshing Co. (C. C.) 70 Fed. 646: "It is a

mooted question in this country as to whether a corporation may purchase shares of its own stock. Many. states forbid it. In the absence of a charter provision or a statute forbidding it, there is no reason why the stock should not be purchased, at least with the profits derived from the business of the corporation, where all the stockholders assent thereto." And commenting on that proposition Cook, in his excellent work on Corporations (section 311), says: "The cases which appear to uphold a contrary rule are found, upon a close examination, to come within the exceptions given above." That is to say, the purchase of its stock by a corporation is not held invalid unless it is done without the consent of the stockholders, is prohibited by charter or statute, or is done to the injury of creditors. While not in a position to know whether the proposition, as stated by the author, is absolutely correct, the cases coming under our consideration bear out the text.

It is the usual contention of those attacking a purchase of stock that when a corporation purchases its own stock the corporate funds are used and appropriated and that no property is received by the corporation except the right to resell. But that objection can amount to nothing but a limitation of the power of the corporation to purchase. If the creditors of the corporation are not injured, and the stockholders consent to the purchase, and the law does not prohibit it, the limitation does not apply, and the corporation will not be sustained in an attempt to evade performance of its contracts of purchase, under a plea of ultra vires. Burnes v. Burnes (C. C.) 132 Fed. 485; In re Castle Braid Co. (D. C.) 145 Fed. 224; State Life Ins. Co. v. Nelson, 46 Ind. App. 137, 92 N. E. 2. In the federal case last cited, in order to restore peace in the management of the affairs of the corporation and to get rid of vexatious litigation among the directors and officers, certain stock of the corporation was bought by it, which makes it very similar in its facts to this case. The federal District Court held the purchase legal, the corporation being solvent and no creditor objecting. In this connection we call attention to the note to Commercial Bank v. Burch, 141 Ill. 519, 31 N. E. 420, as reported in 33 Am. St. Rep. 331, where there is a review of the authorities on the subject.

[3] There was evidence that justified a finding that the corporation was solvent and the stock at par when it purchased the stock. Appellee testified: "When I sold out I was under the impression that, instead of a loss, the books showed the book value of this stock was worth 100 cents on the dollar. That is what I am testifying to. I think when we took that $12,000, the time before we sold it, when we sold out the stock was worth more at that time, that $12,000 was worth more, is my recollection, I think at the time I sold out that $12,000 was worth dollar for dollar. * * * My impression is that at the time when we sold out the stock the stock was worth 100 cents on the dollar." That statement was contradicted by Jeffers, the president of the corporation, but afterwards he testified that, a short time before the corporation bought the stock, he had bought stock at par, and that Spencer had, about the time of the corporation's purchase, bought stock from Birkhead and Brownlee, and it was shown that such stock was sold at par. It is true that Jeffers swore that there had been an actual loss in the business, but he made statements showing that the corporation had ample means to pay all of its debts when the stock was bought.

[4] Failure to pay debts and insolvency are different matters, for, however much a person may owe, if he has means or property sufficient to pay his debts, he is not "insolvent," as the term is ordinarily used. The term may have a more restricted meaning in certain instances in bankruptcy proceedings (Toof v. Martin, 80 U. S. 40, 20 L. Ed. 481), but in this connection it must be used in the general sense of the insufficiency of the entire property and assets to pay the debts of the corporation. There was no testimony tending to show that appellant ever contemplated being unable to pay its debts in the ordinary course of business. Internal dissension seemed to be affecting the financial condition of the corporation more than a lack of means, and to remove that dissension and strife the purchase of the stock was made. The record does not show that the debts existing when the purchase was made had not been extinguished.

The case of Reagan Bale Co. v. Heuermann, 149 S. W. 228, decided by this court, and in which a writ of error has been refused by the Supreme Court, is cited as sustaining the position taken by appellant. If the case were similar to this in other respects, the fact that the corporation in that case was insolvent would be sufficient to differentiate it from this case. There can be no conflict in holding that a corporation, without authority to do so, could not issue preferred stock so as to make the rights of the owners superior to the rights of creditors, and in holding that a solvent corporation will be held bound by the purchase of its stock when the contract has been fully executed by the seller. Cook on Corporations is cited to sustain, and does fully sustain, the first proposition, and that author as fully sustains the proposition that subject to certain conditions, hereinbefore mentioned, complaint against the purchase of its own stock by a corporation cannot be sustained. Sections 311, 312, and authorities cited in 6th Ed. As said in the case of Lindsay v. Arlington, 186 Mass. 371, 71 N. E. 797, cited by Cook: "The power of a corporation to purchase its own capital stock is settled,

as also is its power to agree with a stockholder that his shares shall be transferred to the corporation under certain circumstances."

In Reese on Ultra Vires, § 120, it is stated that some states in the Union hold that a corporation may, in the absence of statutory provisions to the contrary, if it acts in good faith, buy its own stock. A number of authorities are cited, among the number Clapp v. Peterson, 104 Ill. 26, and the following was quoted from that decision as the true rule: "Corporations may purchase their own stock in exchange for money or other property, and hold, reissue, or retire the same, provided such act is had in entire good faith, in an exchange of equal value, and is free from all fraud, actual or constructive; this implying that the corporation is neither insolvent nor in process of dissolution, and that the rights of creditors are not thereby injuriously affected." The facts of this case bring it strictly within the terms and spirit of the rule as stated by the Illinois case.

In the case of Barron v. McKinnon (C. C. A.) 196 Fed. 933, cited by appellant, it was held that where national banks have loaned money on their shares of stock, or purchased such shares in violation of section 5201, Rev. Stats. U. S. (U. S. Comp. St. 1901, p. 3494), that the bank's title to such stock is good, and the cases of First National Bank of Xenia v. Stewart, 107 U. S. 676, 2 Sup. Ct. 778, 27 L. Ed. 592, and Lantry v. Wallace, 182 U. S. 536, 21 Sup. Ct. 878, 45 L. Ed. 1218, are cited. In the first case cited it was held: "While this section in terms prohibits a banking association from making a loan upon the security of shares of its own stock, it imposes no penalty, either upon the bank or borrower, if a loan upon such security be made. If therefore the prohibition can be urged against the validity of the transaction by any one except the government, it can only be done before the contract is executed, and while the security is still in the hands of the bank." In the other case, Lantry v. Wallace, after reviewing certain cases, the Supreme Court of the United States held: "In view of these decisions it cannot be held that the purchase by the bank of its own shares of stock was void. It was, of course, a matter of which the government by its officers could take cognizance, and it may be that it was a matter of which stockholders having an interest in the proper administration of the affairs of the bank could complain in a proceeding instituted by them to restrain the bank from violating the statute." Those authorities fail to sustain the contentions of appellant in this case.

The case of Gaston & Ayres v. Campbell (Tex. Sup.) 140 S. W. 770, does not sustain the contention of appellant in regard to estoppel, although there are expressions by this court on the question of estoppel in the same case which might be construed to sustain it. The Supreme Court, however, did not agree with the conclusions of this court, but it was held that, "while such a corporation retains the benefits of such a contract, it silently affirms, and must not be permitted to deny, its validity."

We conclude in the language of a recent decision by the Supreme Court of Michigan: "This contract, under the circumstances alleged in complainant's bill, is not ultra vires by reason of defendant purchasing shares of its own stock. A corporation acting in good faith, without objection from stockholders and without prejudice to creditors, may purchase shares of its stock, regardless of the purpose for which it was organized, unless forbidden by statute." Cole v. Realty Co., 169 Mich. 347, 135 N. W. 329. And if that proposition were not sustained by the great weight of authority, appellee having fully performed his part of the contract, no creditor complaining of the purchase of the stock, the corporation having been solvent at the time of the contract, appellant is estopped from denying its liability. If appellant paid more than the market value for the stock, its improvidence would not invalidate the contract, for it obtained appellee's property, and if it did not realize on it appellee should not be held liable for its failure or neglect to realize from the property. The creditors have not complained, and the stockholders actively acquiesced in the purchase.

The corporation in this case was not chartered under the provisions of the act of 1907 (Gen. Laws 1907, p. 309), but under a prior law, and while section 3 of the act may apply to corporations existing at that time, as well as those created thereafter, the facts of this case do not bring it within the purview of that section, because there was no attempt to decrease the capital stock of the corporation, and if there had been it could have no application because no creditor was prejudiced by the purchase of the stock, and the statute does not contain any penalty for its violation. The stock was not retired, but bought for the express purpose of placing it on the market again; the object of the purchase being to rid the corporation of individuals, personæ non grata with the president.

We recognize the fact, forcibly shown by the excellent brief filed by appellant, that there is strong, well-considered authority for the propositions advanced by appellant, but undoubtedly the weight of authority is to the contrary, and we believe that the numerous decisions, by which our opinion in this case is sustained, are more logical and should be followed.

The case of Maryland Trust Co. v. National Mechanics' Bank, 102 Md. 608, 63 Atl. 70, is a strong and well-considered one, and in a case where the shareholders, if not the creditors, are concerned, it would carry weight. In that case, however, not only the corporation but the stockholders were resisting a contract made by the board of directors

by which the stock of the Maryland Trust Company was exchanged for the stock of another corporation. In order to carry out that contract, it had been deemed necessary for the trust company to buy its own stock, and that purchase was attacked by the stockholders and the corporation. That fact differentiates that case from this. Much of the Maryland opinion is devoted to a discussion of the rights of the stockholders, which could have no pertinency nor force in a case where every stockholder had agreed to the purchase. No one is complaining in this case except a corporation which is seeking to evade the performance of a contract which has been fully executed by the other contracting party.

The judgment is affirmed.

### On Motion for Rehearing.

FLY, C. J. [5] That part of the act of 1907 relating to private corporations, known as article 1152, Revised Civil Statutes of 1911, which authorizes a decrease of the capital stock of any corporation, does not apply to a case like the present. The purchase of the stock by the corporation was not intended to decrease the capital stock, and the shares were not retired, but held with the intent to again sell them. If the corporation had, by the purchase, intended to decrease its capital, it would not have succeeded because there was no compliance with the article, and it might have been compelled to again sell the stock. That statute certainly does not prohibit the purchase of its stock by a corporation, and if it did it does not authorize the corporation to seek to evade its obligations in a case where the party contracting with it has fully performed all he agreed to do, by a plea that it violated the law in making the contract. In Herman on Estoppel, § 1179, it is said: "When a contract has in good faith been fully performed, and nothing remains to be done by the party seeking relief, and all the shareholders have acquiesced in its performance, the plea of ultra vires or mere want of power is not available by the corporation in an action brought against it for not performing its portion of the contract." That language was approved in Railway v. Gentry, 69 Tex. 625, 8 S. W. 98, and in the case of Bond v. Terrell Mfg. Co., 82 Tex. 309, 18 S. W. 691, the Gentry Case is approved. So in 5 Thompson on Corporations, § 6016, it is said: "The great mass of judicial authority seems to be to the effect that where a private corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract, and an action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense that it had no power to make it." The text is supported by ample authority, as shown by the cases cited in the footnote. To the same effect are Logan v. Association, 8 Tex. Civ. App. 490, 28 S. W. 141, and Nat. Bank v. Oil Co., 24 Tex. Civ. App. 645, 60 S. W. 828; Chapman v. Iron Clad Co., 62 N. J. Law, 497, 41 Atl. 690.

In the National Bank Act it is provided that no bank "shall make any loan or discount on the security of the shares of its own capital stock nor be the purchaser or holder of any such shares," except under circumstances named, for its own protection, and in the case of Lantry v. Wallace, 182 U. S. 536, 21 Sup. Ct. 878, 45 L. Ed. 1218, where shares were purchased in open defiance of the law, the highest judicial tribunal in this country held: "In view of these decisions it cannot be held that the purchase by the bank of its own shares of stock was void. It was, of course, a matter of which the government by its officers could take cognizance; and it may be that it was a matter of which stockholders, having an interest in the proper administration of the bank, could complain in a proceeding instituted by them to restrain the bank from violating the statute."

In the case of Crandall v. Lincoln, 52 Conn. 73, 52 Am. Rep. 560, where it was held that the officers of a corporation must restore funds for shares of stock sold by them to a corporation, it was said: "We do not intend to say that under no circumstances can a corporation legally become the owner of its own stock. * * * Nor do we intend to say that a direct purchase would be declared illegal at the instance of a party to the transaction."

Again, in an English case—and English cases usually hold that a corporation cannot purchase its shares of stock—it was held that, where differences had arisen between the company and one of its directors, the company had the authority to purchase the shares. In another English case, Re Balgooley Distillery Co., it was held, it is said with reluctance, that the company did not act ultra vires in selling a quantity of whisky to one of its shareholders and taking in part payment therefor shares of its stock. Both of the decisions were placed on the ground of the necessity of the corporation. The cases are quoted from in notes under Hall v. Henderson, 61 L. R. A. 621. Those cases have peculiar application to the facts of this case where the shares of stock were bought in order to prevent "great and irreparable loss, if not insolvency" of the corporation. The shares were not "retired or merged," but it was provided in the resolution authorizing their purchase that they should be "resold and reissued under the direction of the board of directors."

In the case of Blalock v. Mfg. Co., 110 N. C. 99, 14 S. E. 501, it was held: "The shares of the capital stock of the defendant corporation were the lawful subject of purchase and sale, might be bought and sold in the market, and, in the absence of statutory provision to the contrary, it might buy such shares for its own benefit from owners of

them, upon such terms as might be agreed upon subject to the rights of its creditors in proper cases to resort to its capital stock, paid and unpaid, as a trust fund out of which they may be entitled to have their debts paid. It is bound by its agreements with persons from whom it may purchase such shares of stock, and they may enforce the same by proper legal remedies, just as they might do in case of like agreements in respect to any other species of property. Hence if it made its promissory note to one of its stockholders for the price, or any part of it, that it agreed to pay him for his shares of stock, he would have his remedy, so far as it is concerned, just as any other creditor would, certainly subject to the possible rights of other creditors against him as a stockholder in some cases wherein he might be liable. If he were not liable to other creditors in some way as a stockholder, he would be on the same footing as such creditors. There is no just reason why he should not be. The defendant corporation is therefore bound to pay the stockholders, respectively, whose shares of stock it bought, the several sums of money it agreed to pay for the same." We think the quotation states the law applicable to the facts of this case, and it is upheld and supported by the weight of American authority. Fremont Carriage Co. v. Thomsen, 65 Neb. 370, 91 N. W. 376; Dock v. Schlichter, 167 Pa. 370, 31 Atl. 656; Farmers' Bank v. Champlain Trans. Co., 18 Vt. 131; Lowe v. Pioneer Threshing Co. (C. C.) 70 Fed. 646; Crandall v. Lincoln, 52 Conn. 73, 52 Am. Rep. 560; New England Trust Co. v. Abbott, 162 Mass. 148, 38 N. E. 432, 27 L. R. A. 271; Marvin v. Anderson, 111 Wis. 387, 87 N. W. 226; Calteaux v. Mueller, 102 Wis. 525, 78 N. W. 1082.

Again, we hold that article 1152 could not affect the contract in this case because appellee was informed by the resolution of the board of directors that there was no intention to decrease the capital stock, but that the shares should be sold, and provision was made for the use of the funds arising therefrom. Up to the time of the consummation of the contract of purchase there was no decrease in the capital stock of the corporation, and appellee had no notice whatever that it was contemplated to decrease the capital stock, if such was in contemplation. But there is nothing that tends to show that any decrease was in contemplation; the sole object apparent being the preservation of the existence of the corporation. Not only American, but English, decisions recognize that such a condition of affairs creates a necessity that would justify a purchase of the shares of stock. While in the light of subsequent events it appears that another person than the one chosen should have been removed from the corporation for its good, still the plan was adopted, and appellee in good faith, with no notice of any design, if such existed, to decrease the capital stock of the corporation, fulfilled his part of the contract, and then had his claim for payment of his promissory note denied him only because of the ill will of the president of the corporation. After bad management, strife, and dissension had lowered the value of his shares, he is met with the demand to pay back what he had already obtained on his shares, and informed that when that is done his worthless shares of stock will be returned. That kind of a proposition has no ring of upright dealing and equity about it.

[6] If there had been no resolution to the effect that the shares of stock should not be merged by the purchase, it is well-settled law that they would not. "When a corporation buys shares of its own capital stock, the capital stock is not reduced by that amount, nor is the stock merged." Cook on Corp. § 314; Vail v. Hamilton, 85 N. Y. 453; Jefferson v. Burford (Ky.) 17 S. W. 855; Commonwealth v. Railroad, 142 Mass. 146, 7 N. E. 716; Ralston v. Bank, 112 Cal. 208, 44 Pac. 476. It follows that the purchase of the shares of stock by appellant did not reduce or decrease its capital stock and the transaction could not be brought within the purview of article 1152.

Speaking on the effect the purchase of its own stock has on the corporation, Clark & Marshall in Private Corporations, § 411, state: "It has been held that a corporation cannot purchase its own shares for the purpose of holding them, on the ground that the purchase by a corporation of its own shares in effect reduces its capital stock to that extent until the shares are reissued. Strictly speaking, however, this is not in any sense a reduction of the capital stock." The same authors state: "When a corporation purchases shares or its own stock, as it may lawfully do under some circumstances, and as it may also do unlawfully, the shares are not thereby merged or extinguished unless such is the intention. If it does not intend to retire the shares, they merely remain in suspension as it were and may be at any time reissued." See, also, section 199.

Machen, in his work on Corporations, while attempting to uphold a contrary doctrine, says: "It must be conceded that a somewhat larger number of the American courts have taken the view that a corporation may, without express statutory authority, purchase its own shares, provided the purchase is entered into bona fide and does not endanger the claims of creditors." Section 628, and long list of authorities in note. The author, however, indorses the English view of the question because it "is supported by the weight of Mr. Morawetz's opinion." This court, however, feels disposed to follow the opinions of a majority of American courts, rather than those of English courts, even though the latter have received the

sanction of the writer of a text-book. Yet this author admits that when shares of a corporation are purchased they are only temporarily merged or extinguished. Machen, Corp. § 633.

Even Morawetz, who arrays his opinion against that of a majority of American courts, including that of the Supreme Court of the United States, says: "If shares in a corporation are purchased by the company, they may, unless the contrary be provided, be issued at a subsequent time. Under these circumstances, it is said, the shares do not become merged, but remain temporarily in abeyance and may be sold again by the corporation." In spite of that he contends that "it would be an absurdity to say that a corporation can really hold shares in itself."

In the case of Knickerbocker Co. v. State Board, 74 N. J. Law, 583, 65 Atl. 913, 7 L. R. A. (N. S.) 885, it was held that shares of stock once issued remain oustanding until retired in the legal manner, and therefore, when a corporation bought its stock, it was not retired or merged.

In the case of Pabst v. Goodrich, 133 Wis. 43, 113 N. W. 398, 14 Ann. Cas. 824, it was held a solvent corporation has the right to purchase and hold its stock, and that such purchase does not amount to a cancellation of such stock. It says further: "A corporation clearly has the right to purchase its stock, keep it alive, and treat it as assets."

[7] Where the owner of stock transfers it directly to the corporation itself, without the intervention of a trustee, the transferror is not released from his liability on the stock, but remains as fully chargeable as though no transfer had been attempted. Cook on Corp. § 251; Machen, Corp. § 631; In re Reciprocity Bank, 22 N. Y. 9; Chrisman v. Independence Mfg. Co., 168 Mo. 634, 68 S. W. 1026; Walters v. Porter, 3 Ga. App. 73, 59 S. E. 452. We cannot see where any question of public policy could arise; no one can be injured by the transfer of the shares of stock.

The motion for rehearing is overruled.